## Kingman & Co. v. E. B. Meeks.

1. CONTRACTS—*Sale of a Threshing Machine, Entire.*—A contract of sale of a self-feeding threshing machine, consisting of an engine, separator, self-feeder, etc., for the sum of $1,825, although containing a provision that if the defective machinery can not be made to fill the warranty, it may be returned, is an entire contract, and the self-feeder having failed to fill the warranty, the purchaser had a right to return the machine as not filling the warranty.

2. SAME—*When Entire.*—When the things to be furnished by the vendor are certain and fixed, and are described in the contract of sale, and the consideration for the whole is single and entire, the contract is entire, and no part of the consideration can be recovered in an action on the contract, until all the things to be furnished for such consideration have been furnished.

3. WARRANTY—*Breach of—Return of Goods Excused.*—Where a contract of sale of a machine contains provisions that if it does not fill the warranty it may be returned, the vendee is not required to return it to any particular place after the vendor refuses to receive it.

**Memorandum.**—Assumpsit. In the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Declaration on the contract hereafter set forth. Plea of general issue with notice that defendants will insist: That the alleged contract mentioned in declaration and the execution thereof by the defendant were obtained by the fraudulent misrepresentation of plaintiff and its agent; that the self-feeder had been sold in different parts of the State of Illinois and other States, and was a success in every way; that the machines mentioned in contract were and each of them was first class in every respect and would do first class work, and had been tried and found to be perfect and suitable for the purposes stated; whereas said representations were each false, as plaintiff and its agent well knew. That the clause contained in said contract referring to warranty related to the verbal warranty of plaintiff and its agent, and was to the effect that said feeder would do good work; that the machines and each of them would do good work, and that the machines and each of them and the work done by them should be first class and satisfactory to defendant; that said feeder or any of the machines did not and would not, after due trial, do good work that was first class or satisfactory to the defendant; that the plaintiff was duly notified; that defendant refused to accept the machines or any of them, and that they were held subject to the order of the plaintiff. Trial by jury; verdict and judgment for defendant; appeal by plaintiffs. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

*Copy of contract sued upon:*

Please furnish or ship for the undersigned, in care of Hunt and Anderson, to Elburn, Illinois, machinery as follows:

1 7¾ self steering Russell Eng. with fixtures; 1 36x54 cyclone separator, 18 ft. D. K. iron wheels; 1 Russell & Co. feeder; 1 90 gal. steel tank front of Eng.; 1 Automatic 4 wheel stkr.; 1 inch Blakely jet pump; 16 ft. hose; 1 telescope weigher; 1 main drive belt 150 ft. rubber, endless; 2 1 2 4 duck canvas separator, 10 feet, 1¼ horse; 1 No. 2 Dodge injector; chime whistle; also fixtures and free extras as provided in price list.

I, the undersigned, agree to receive the above f. o. b.

Elburn, Ills., subject to the conditions named below, and further agree to pay to your order on delivery the sum of eighteen hundred and twenty-five dollars, as follows:

Cash September 1, 1892, $925; note due January 1, 1893, $900.

As a condition hereof it is fully understood and agreed:

1st.   That this order is given subject to the acceptance of Kingman & Co., and that no promises, whether of agent, employe, or attorney, in respect to the payments, security or to the machinery named will be considered binding unless made in writing and ratified by the home or branch office.

4th.   The above articles are warranted to be of good material, well made, and with proper management, capable of doing as good work as similar articles of other manufactures.   If said machinery or any part thereof shall fail to fill the warranty, written notice shall be given to Kingman & Co., Peoria, Ill., and to the party through whom the machinery was purchased, stating wherein it fails to fill the warranty, and time and opportunity and friendly assistance given to reach the machinery and remedy any defects.   But if the purchasers fail to make it perform through improper management, or lack of proper appliances, or neglect to observe the printed or written directions, then the said purchasers are to pay all necessary expenses incurred.   If the defective machinery can not then be made to fill the warranty, it may be returned by the undersigned to the place where received, and another furnished on the same terms of warranty, or money and notes to the amount represented by the defective machine shall be returned, and no further claim be made on Kingman & Co.

Continued possession or use of the machine after the expiration of time named above shall be conclusive evidence that the warranty is fulfilled to the satisfaction of the undersigned, who agree thereafter to make no further claim under the warranty.   In case any casting fails through undeniable defect in its material within two months from the date of purchase, such defective piece shall be replaced with-

out charge, except freight or charges; but on any claim for replacement of defective castings, the defective pieces shall be presented to Kingman & Co., or to the dealer through whom the machinery was ordered, and shall clearly show the defects.    Defects or failure in one part shall not condemn or be the grounds for claiming renewal, or for the return of any other part.    This warranty to be invalid and void in case the machine is not settled for when delivered, or if this warranty is changed, whether by erasure, addition or waiver.                                E. B. MEEKS.

BOTSFORD & WAYNE and ARTHUR KEITHLEY, attorneys for appellant.

APPELLEE'S BRIEF, CHARLES WHEATON AND E. H. GARY, ATTORNEYS.

Whether a contract is entire or severable, is ordinarily determined by inquiring whether or not it embraces one or more separate and distinct subject-matters, or whether the obligation it imposes is due at the same time and to the same person, and whether the consideration is entire, or distinct to each subject-matter and person.    Highham v. Harris, 108 Ind. 246; I. B. & W. R. Co. v. Koons, 105 Ind. 507; Rainhott v. East, 56 Ind. 579.

If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or it is left to be implied by law, such contract will generally be severable.    Parsons on Contracts, 517.

An entire contract can not be apportioned, and the performance of it enforced in fragments.    Crosby v. Loop, 14 Ill. 330; Ill. Cent. R. R. Co. v. Demars, 44 Ill. 292; Rockford, R. I. & St. L. R. R. Co. v. Lent, 63 Ill. 288; Hartzfeld v. Converse, 105 Ill. 534.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Hunt & Anderson were local agents of appellant at Elburn, Illinois, and T. B. Strosnyder was its traveling

salesman. On May 16, 1892, Strosnyder obtained from appellee a written order for a self-feeding threshing machine, consisting of an engine, separator, feeder, etc., to be shipped to Elburn in care of said local agents, which appellee agreed to receive at that place. The price was $1,825, and notes were to be made and secured by chattel mortgage.

It was provided in the order, among other things, that the articles were warranted to be of good material, well made, and with proper management, capable of doing as good work as similar articles of other manufacturers; that if said machinery or any part thereof should fail to fill the warranty, notice should be given, and time, opportunity and friendly assistance given to reach the machinery and remedy any defects; that if the defective machinery could not then be made to fill the warranty, it might be returned to the place where received and another furnished on the same terms of warranty, or money or notes to the amount represented by the defective machinery should be returned; that defects or failure in one part should not condemn or be the grounds for claiming renewal, or for the return of any other part, and that the notes for the price should be left at Kane county bank until the machine should fill the warranty, after being used in rye and oats.

Hunt & Anderson were to have a commission of twenty per cent on the sale as local agents, and when the machine arrived at Elburn they and appellee unloaded it and took it to appellee's place in Elburn. Notes were made for the purchase price, one for $925, due on or before September 1, 1892, and the other for $900, due on or before January 1, 1893, and on each note the following indorsement was written: " This note to be left with the Kane county bank until E. B. Meeks has tried the machine and sees that it fulfills the condition of the warranty." The notes were left at the bank and a chattel mortgage was made and signed but not acknowledged, and was also left there.

Appellee had become apprehensive that the self-feeder would not be a success, before the machine arrived; and had expressed to Anderson his fears that the machine would not

be of any use to him on that account.   Hunt took the machine into the field, and it was tried, but would not work. Strosnyder had told appellee, for the purpose of obtaining the order, that he knew positively that the self-feeder would work and that it had been sold to different parties and had given entire satisfaction.   That statement was false, and it is admitted by appellant that the self-feeder was a mere experiment and proved an entire failure.   There were other self-feeding threshing machines in operation in the vicinity which were successful and operated satisfactorily.   When the machine was shipped, appellant sent with it a platform and appliances for feeding by hand, which constituted no part of the machine as ordered, and appellant's agents wanted appellee to let them alter the machine to a hand-feed machine and have him keep it, but he refused to do so.   The machine was taken back to appellee's shed by his employe and the local agent sent to appellant for an expert.   The machine was afterward taken out twice and tried, but the parties sent by appellant failed to make it work.   Appellee told each of them that he would not have the machine and it was put back in his shed and remained there.

Appellee wrote to appellant that the machine had failed to fill the warranty, that the self-feeder was worthless, and specifying other alleged defects, and that he should deliver the machine to Hunt & Anderson or leave it where they might say, and demand the return of his notes.   Afterward he wrote again that Hunt & Anderson claimed they had nothing to do with the machine; that it was subject to appellant's order and that he wished it removed.   Appellant made no reply to either of his letters, but began this suit and declared upon the written order for the machine, adding the common counts.

Appellee pleaded the general issue and gave notice that he would prove that the contract was obtained by false and fraudulent representations; that the clause in the contract referring to warranty related to a verbal warranty, and that both the written and verbal warranty failed, and he offered to return the machine but acceptance was refused.   There

was a trial and appellee obtained a verdict and judgment in his favor.

Appellant contends that the court erred in admitting evidence of false statements made by Strosnyder in obtaining the order and of a verbal warranty made by him, together with his statement that the clause in the order providing for leaving the notes in the bank until it was seen that the warranty was filled, related to that verbal warranty. Appellee exacted a specific warranty which was embraced in the writing, and parol evidence was not admissible to prove that Strosnyder at the same time said that he knew that it would work, and that it had given satisfaction to others, or that he then verbally warranted the machine. Benjamin on Sales, Sec. 942. But the admission of the evidence did no harm in this case in the view that we take of the contract, since the failure of the written warranty was as absolute as that of the supposed verbal warranty, and the contract gave to appellee a right of return upon such failure as complete as the right to rescind a sale and return property on account of fraud.

But it is also insisted that the court was wrong in construing the contract and in refusing instructions which stated that the contract was divisible; that under its terms appellee was bound to return such parts as did not fill the warranty and keep and pay for all such parts as did, and that if the machine filled the warranty, except as to. the self-feeder, which was admitted to be worthless, the jury must find a verdict for the contract price, less the amount to be deducted for the self-feeder.

Proof was offered on the trial that there was a list price of the self-feeder and that such price was $200, but the proof was not admitted. It is contended that the contract was divisible and that appellant could recover to the extent of its performance. This contention is based upon the provisions in the order, that if defective machinery could not be made to fill the warranty it might be returned and another furnished on the same terms of warranty, or money and notes to the amount represented by the defective machine should

Kingman & Co. v. Meeks.

be returned, and that defect or failure in one part should not condemn or be grounds for claiming renewal, or for the return of any other part.

The things to be furnished by appellant were certain and fixed and were described in the contract, and the consideration for the whole was single and entire. Ordinarily no part of such a consideration can be recovered in an action on the contract until all the things to be furnished for such consideration have been furnished. The contract made no apportionment of the price among the several articles and afforded no means for such apportionment. The subject-matter of the contract was a threshing machine, although the separate parts were specified, and the machine was to thresh grain, and rye and oats were especially named. That fact is to be considered in determining whether the parties manifested an intention in their contract that appellee should pay for such parts as might be furnished. If such was the intention he might get no threshing machine, but be compelled to pay for the hose, belt or whistle named in the order. The failure was in an essential part of a self-feeding threshing machine, and the consideration being single for the entire machine, we think that the court was right in excluding the evidence that there was a list price for that part, and in refusing to instruct the jury as requested. There were other defects claimed to exist in the machine which might perhaps have been remedied, but the utter failure of the feeding apparatus was irremediable, and without it appellee did not have the threshing machine which appellant was to furnish to him.

The point is also made that appellee should have returned the machine to Elburn, where it is said that he received it. The machine was shipped to Elburn in care of appellant's agents, Hunt & Anderson, and they, together with appellee, unloaded it. After the trials by appellant's agents it was left in appellee's shed. But if it was delivered to appellee at Elburn when taken off the cars and set up rather than at the shed where it remained, a refusal by Hunt & Anderson to receive it and the failure of appellant to reply to his letter

notifying them of such refusal or to give any direction what to do with it, relieved him from any further duty concerning the return of it.

It appears to us that justice has been done, and the judgment will be affirmed.